**TRI–CITY COMPREHENSIVE COMMUNITY MENTAL HEALTH CENTER, INC., Glenn Kuipers, Jacqueline Beverly and Ernest Leydet, Appellants (Defendants Below),**

v.

**Ella FRANKLIN, Appellee (Plaintiff Below).**

No. 3–885–A–221.

Court of Appeals of Indiana, Third District.

Oct. 29, 1986.

John R. Highland, Chesterton, John Sedia, Highland, for appellants.

Calvin D. Hawkins, Gary, for appellee.

STATON, Presiding Judge.

Tri-City Comprehensive Community Mental Health Center (Tri-City) appeals from a judgment entered on a jury verdict in favor of Ella Franklin (Franklin) in Franklin's wrongful discharge action against Tri-City.

Franklin claimed that her termination was a violation of her right to due process as provided in Tri-City's Personnel Policies Manual. In response to Tri-City's claim that Franklin was an at will employee, Franklin contends her dismissal was a retaliatory discharge in violation of public policy.

Tri-City moved for judgment on the evidence, pursuant to Indiana Rules of Procedure, Trial Rule 50, at the close of plaintiff's case, at the close of all the evidence and after the jury returned its verdict but before judgment had been entered. The trial court denied the motions and Tri-City claims error. Because we agree that the trial court should have granted Tri-City's motion for judgment on the evidence, we do not address Tri-City's other allegations of error.

Restated, the issue raised by Tri-City's appeal which is dispositive of this case is:

Whether there was sufficient evidence that Franklin had a property interest in her job such that due process protections apply?

After a jury verdict, judgment on the evidence is proper only where the evidence is insufficient to support the verdict as a matter of law. The appellate court and the trial court employ the same standard of review in determining the propriety of a judgment on the evidence—we consider only the evidence and reasonable inferences in favor of the non-moving party. *Coffel v. Perry* (1983) Ind.App., 452 N.E.2d 1066, 1068. We do not weigh conflicting evidence or judge the credibility of witnesses. *Id.* A trial court may properly grant a defendant's motion for judgment on the evidence when there is no evidence on one or more critical issues or the evidence with respect thereto is without conflict and leads only to inferences in favor of the defendant. *Welch v. Railroad Crossing, Inc.* (1986) Ind.App., 488 N.E.2d 383, 387.

Tri-City is a private, not-for-profit agency providing mental health services in the East Chicago, Indiana area. The agency receives federal funding to support its work and as a recipient of such funds Tri-City is required to maintain a personnel policies manual. Franklin was employed by Tri-City in January, 1975 as a social worker and her duties remained substantially the same until the time of her discharge in December, 1981. During the course of her employment Franklin requested, but was denied, the additional responsibility of off-hour and emergency intake on call duty. The position meant additional pay but the center director, Glenn Kuipers, did not believe Franklin met the qualifications necessary for the job.

Franklin filed a grievance regarding the denial of her request for off-hours intake work. In addition, a series of disputes arose over a letter Franklin wrote to a township trustee and over notations Franklin made in a patient's progress notes. Finally, Kuipers discharged Franklin in writing, listing as reasons: the failure to follow

administrative directives, violation of grievance procedure rules, harassment of administrative staff, undocumented and unjust accusations made toward staff, failure to follow organizational lines of authority and accumulation of written warnings concerning conformity to administrative procedures.

Franklin argued that her discharge was contrary to the procedures outlined in Tri-City's personnel policies manual, thus denying her procedural due process under the Fourteenth Amendment to the Constitution of the United States.

The Fourteenth Amendment of the Constitution provides in part that "[n]o State ... shall deprive any person of life, liberty, or property without due process of law." The action inhibited by the Fourteenth Amendment is only such action as may fairly be said to be that of the States. *Shelly v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161. "That Amendment erects no shield against merely private conduct, however discriminatory or wrongful." *Id.* Both "state action" and "property" or "liberty" interests are necessary prerequisites to invoking the Fourteenth Amendment's due process requirements. *Town of Speedway v. Harris* (1976) 169 Ind.App. 100, 346 N.E.2d 646, 649 n. 7. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The sufficiency of the claim of entitlement to such a property interest must be decided by reference to state law. *Id.; Gansert v. Meeks* (1979) 179 Ind.App. 209, 384 N.E.2d 1140, 1143. Only those interests initially recognized and protected by state law are entitled to constitutional protection under the Due Process Clause. *Morris v. City of Kokomo* (1978) 178 Ind.App. 56, 381 N.E.2d 510, 514.

■ Indiana has long adhered to the employment-at-will doctrine under which an employee at will can be discharged by his employer for any cause whatsoever, or for no cause, without giving rise to an action for damages. *Campbell v. Eli Lilly and Company* (1980) Ind.App., 413 N.E.2d 1054. Where the tenure of service is indefinite or cannot be determined by the terms of the employment contract, the employment is at will and may be terminated at any time by either party. *Id.* at 1060.

■ Franklin argues that she was not an employee at will, but that she had a series of one year contracts, renewable from year to year. She bases this contention upon the provision in the Tri-City personnel manual for annual performance and salary reviews of employees. She claims that the promulgation of the manual without an express statement by Tri-City that it could discharge employees at any time, for any reason, with or without cause "brought into being a bona fide unilateral contract." Appellee's Brief p. 11.

The courts of this state have rejected arguments based upon the existence of employee handbooks which set out certain procedures to be followed in disciplining or terminating employees. In *Shaw v. S.S. Kresge Company* (1975) 167 Ind.App. 1, 328 N.E.2d 775 Judge Hoffman said:

> Even assuming, *arguendo,* that the handbook relied upon by appellant constituted a part of the contract, in the absence of a promise on the part of the employer that the employment should continue for a period of time that is either definite or capable of determination, the employment relationship is terminable at the will of the employer. *See: Pearson v. Youngstown Sheet and Tube Co.,* (7th Cir., 1964), 332 F.2d 439. There being no binding promise on the part of the employee that he would continue the employment, it must also be regarded as terminable at his discretion as well. For want of mutuality of obligation or consideration, such a contract would be unenforcible [sic] in respect of that which remains executory. *See:* 1A Corbin, Contracts, Sec. 152 (1963). *See also:* 1

Corbin, Contracts, Sec. 96 (1963); 3A Corbin, Contracts, Sec. 683 (1960).

328 N.E.2d at 779. The same result was reached in *Mead Johnson and Co. v. Oppenheimer* (1984) Ind.App., 458 N.E.2d 668 in which the court said, "Employee handbooks are immaterial without an enforceable agreement between the employer and employee of employment for a definite duration." 458 N.E.2d at 671. *See also Campbell v. Eli Lilly and Company, supra.*

There was no evidence to support the existence of an enforceable contract of employment which would take Franklin out of the employment at will classification. She admitted that nothing was said at the time of her employment about the duration of her job except that the then director of Tri-City said he hoped it would be a long time. Record p. 181. There was no evidence that Franklin signed an employment contract or that *she* agreed to serve for any specified length of time. Thus she could have terminated her employment at any time with or without reason. There was no mutuality and no enforceable contract. The existence of procedures for yearly evaluations does not create a contractual right to employment for a year. Franklin's argument is not unlike that advanced by the plaintiffs in *Morris v. City of Kokomo, supra.* There the plaintiffs claimed that grievance procedures of a collective labor agreement established a contractual right to continue in a particular position unless and until certain defined events occurred. Judge Sullivan wrote that the terms of the agreement suggested no more than a procedure to resolve employment-related disputes. "We cannot discern the method by which plaintiffs would have us mystically transform these procedural guarantees into substantive rights." 381 N.E.2d at 515. Like the plaintiffs in *Morris,* Franklin failed as a matter of law to demonstrate a

substantive property interest worthy of procedural due process protection.[1] Therefore, the trial court erred in failing to grant Tri-City's motion for judgment on the evidence.

▇ Franklin urges that the judgment be upheld on the grounds that her discharge violated public policy because it was a retaliatory discharge in connection with her grievance activities. Contrary to Franklin's assertion that there is no clear formulation of what constitutes the public policy exception to the at-will employment doctrine, the rule is clear in Indiana that in order to fall within a recognized exception to the employment at will doctrine, a plaintiff must demonstrate that he was discharged in retaliation for either having exercised a statutorily conferred personal right or having fulfilled a statutorily imposed duty. *Campbell v. Eli Lilly and Company, supra,* (no cause of action for at will employee who reported misconduct of superiors and questioned safety of some drugs manufactured by employer). *See also Martin v. Platt* (1979) 179 Ind.App., 688, 386 N.E.2d 1026 (no public policy exception for employee who reported kickbacks received by superior).

The Supreme Court of Indiana has very recently reaffirmed this refusal to create public policy exceptions to the employment at will doctrine other than those involving the exercise of a statutorily imposed right or duty. In *Morgan Drive Away, Inc. v. Brant* (1986) Ind., 489 N.E.2d 933 the Court said, "Revision or rejection of the doctrine is better left to the legislature." 489 N.E.2d at 934. Franklin did not demonstrate that she was exercising any statutorily conferred right or duty which was the target of a retaliatory discharge and which would bring her within the recognized exception to the employment at will doctrine.

1. Because both a property interest and state action are required to make out a due process claim, and Franklin has failed to demonstrate protectible property interest, we do not discuss the issue of whether Tri-City's receipt of federal funds converts the discharge to state action for due process purposes.

The judgment is reversed and the trial court is ordered to enter judgment for the defendants.[2]

HOFFMAN, J., concurs.

GARRARD, J., dissents with opinion.

GARRARD, Judge, dissenting.

I respectfully dissent. It is, of course, true in Indiana that where one is hired for no fixed term he is considered an employee at will and may be terminated at any time.

I disagree vehemently, however, with the First District's statement in *Mead Johnson and Co. v. Oppenheimer* (1984), Ind.App., 458 N.E.2d 668, 671 that "[e]mployee handbooks are immaterial without an enforceable agreement between the employer and employee of employment for a definite duration."

We are, after all, concerned with the law of contracts in these cases; that is to say, with the rights and duties flowing from an offer and acceptance. Acceptance may arise from performance.

As I pointed out concurring in *Shaw v. S.S. Kresge Co.* (1975), 167 Ind.App. 1, 328 N.E.2d 775, where an employer chooses to adopt and promulgate an employee handbook which specifies employee rights to vacations, holidays with pay, systems for discipline, etc. and in acceptance thereof the employee performs the work assigned, etc., there is an enforceable contract and the employer is not free to unilaterally change the terms retroactively. The employer may change the terms prospectively since there is no specific term for such a contract. When the employer does so and notifies its employees of the proposed changes, it is offering a "new" contract

which the employees may accept by continuing to perform their work.

By the foregoing I do not mean to say that every handbook constitutes a contract. Factual questions may occur, for example, as to whether employees were ever notified such that an offer was made. Furthermore, such handbooks may be so hedged in preserving an employer's discretion or in vague generalizations that they merely create the illusion of a specific policy or benefit. When such is the case it is not our function to write a new agreement for the parties imposing obligations they did not choose to impose upon themselves.

But if an employer chooses to tell its at will employees that upon the completion of six months service they are entitled to a week's paid vacation, and the employees perform, then at the conclusion of the six months the employer may not with impunity change its mind and deny vacation benefits. I see no difference if the employer, instead, through its employee manual or statement of policies, states that beyond a certain probationary period employees will only be discharged for cause or that a first offense of a certain type will be punished by a reprimand.[1] The employer may only alter such policies prospectively without incurring liability for its breach.

I agree with the majority in the present case that Tri-City's action in discharging Franklin was not tantamount to state action merely because Tri-City was a recipient of federal funds. Indeed, it appears to me that is substantially why the federal government, as a condition to funding, might deem it desirable that potential recipients be required to adopt certain policies and procedures concerning the recipients' activities. The government thereby requires the recipient-employer to establish and maintain particular policies which be-

---

**2.** The jury's verdict with respect to Glenn Kuipers was somewhat ambiguous and the judgment entered on the verdict did not mention Kuipers. The parties apparently assume the verdict was favorable to Kuipers, so in light of that fact and our holding in the case, judgment should be entered for Kuipers as well as Tri-City.

**1.** Such things are all the familiar grist of collective bargaining agreements although in the vast majority of instances the contracts apply to employees who are "at will" in the sense they have no specific term of employment.

come contractually enforceable between the employer and its employees.

On that basis I believe Tri-City's Personnel Policies Manual was properly introduced in evidence and was available as proof of Tri-City's obligations.

Examination of the manual fails to reveal any self-imposed restriction on the grounds for which Franklin might be discharged. (While the manual in Article 3400 states general guidelines for "minor offenses," "general offenses" and "serious offenses" it carefully avoids stating any restriction on Tri-City's ability to discharge for any particular reason. Article 3200 defines when employees will be classified as having permanent status but imposes no provision restricting discharge of such "permanent" employees.)

Article 3400, Discipline, does, however, provide that when an employee appears to have committed a breach of acceptable behavior the supervisor will conduct an investigation which "shall" include a discussion with the employee "who will be afforded the opportunity to make an oral or written statement in his behalf or to present additional information."

In addition, Article 3600 provides a grievance procedure for the review of employee complaints and Article 3716 titled "Termination of Permanent Employee" provides that termination of a permanent employee for disciplinary purposes shall be in accord with Article 3400 and that "grievance procedures in accordance with Article 3600 are applicable in all cases."

From the foregoing it appears to me that the court could have determined that while Franklin was not entitled to reinstatement, she was entitled to prove damages for Tri-City's breach of contract in failing to follow its promulgated policies of conducting an investigation including giving Franklin the opportunity to be heard and in refusing to permit Franklin to use the grievance procedure to secure a review of her discharge. Since the jury's award of $15,000 is not challenged as excessive or unsupported by the evidence, I would affirm the judgment.